UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARLOS MARTINEZ RAMIREZ,

                Petitioner,                          Case No. 1:25-cv-13444

v.                                          Honorable Thomas L. Ludington
                                              United States District Judge

KEVIN RAYCRAFT, et. al.,

                Defendants.

_____/

**OPINION AND ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS**

Petitioner Carlos Martinez Ramirez has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. He alleges that he is unlawfully detained in the Chippewa County Jail in Michigan in violation of the Immigration and Nationality Act ("INA"). This is just the latest in a slew of cases in which noncitizens in the country are denied bond hearings under a new DHS policy statement issued on July 8, 2025.

Despite being a Mexican citizen, Petitioner has lived in the United States for nearly twenty-three years without serious issues. Recently, however, circumstances changed when he was arrested on the same day the DHS policy was issued. He was then charged with being an inadmissible immigrant under 8 U.S.C. § 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I).

Pending immigration proceedings for his removal, Petitioner contends that he is entitled to a bond hearing under 8 U.S.C.§ 1226. The Respondents, who include the Secretary of the United States Department of Homeland Security Kristi Noem, Todd Lyons Acting Director of the U.S. Immigrations and Customs Enforcement, United States Attorney General Pamela Bondi, Acting Director of the  Executive Office for Immigration Review Sirce E. Owen, Acting EOIR Chief Immigration Judge Anna C. Little, and Immigration and Customs Enforcement Detroit Field

Office Director Kevin Raycraft, argue that detention is mandatory under 8 U.S.C. § 1225. That argument flows from the above-referenced July 8, 2025, DHS policy statement. Thus, determining whether § 1226 or § 1255 applies controls the ultimate decision.

For the reasons explained below, joining nearly every court in the country, this Court concludes that § 1226, not § 1225, applies to Petitioner's detention. Accordingly, his detention without a bond hearing is unlawful, and his Petition will be granted.

## I.

Petitioner has resided in the U.S. for over twenty-three years—currently residing in Illinois. ECF No. 1 at PageID.7. The facts about Petitioner's life are scant. He has five minor children who are U.S. citizens. *Id.* Petitioner is a well-to-do businessman—he owns three residential properties and a profitable business comprising a restaurant and a series of food trucks, which are now closed due to his detention. *Id.* And aside from some minor traffic violations and an Illinois misdemeanor retail theft conviction in 2005, it does not appear that he has been in significant trouble in the past. *Id.* at PageID.8.

On the weekend of July 4, 2025, Petitioner was vacationing with his family in Petoskey, Michigan. *Id.* While there, he was arrested for an unknown offense, *id.*, and transported to a local county jail. ECF No. 4 at PageID.43. Upon his release from the county jail, ICE officials arrested him and charged him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i), and detained him under 8 U.S.C. § 1225(b)(2). *Id.*

On August 8, 2025, Petitioner appeared at a hearing in immigration court, where the immigration judge denied him bond for lack of jurisdiction. ECF No. 1 at PageID.8; *See* ECF No. 1-2 at PageID.26. Petitioner's next hearing is on December 18, 2025. ECF No. 4 at PageID.44.

This immediate Petition was filed with this Court on October 28, 2025. ECF No. 1. Petitioner alleges violations of the Immigration and Nationality Act (INA), the Fifth Amendment

Due Process Clause, and violation of the Fourth Amendment for an arrest without probable cause. *See id.* at PageID.14–16. He argues that, as a noncitizen residing in the United States, charged as inadmissible for having entered the country without inspection, 8 U.S.C. § 1226(a) allows for his release on conditional parole or bond pending removal hearings, after a detention hearing to evaluate his risk of flight and dangerousness. *See generally* ECF Nos. 1, 5. The Respondents assert that under 8 U.S.C. § 1225(b)(2)(A), Petitioner is properly detained because he falls in a category of noncitizens that the statute mandates be detained pending removal proceedings. *See generally* ECF No. 4. Petitioner seeks immediate release from custody or, in the alternative, a bond hearing; and a finding that Respondents have acted in bad faith. ECF No. 1 at PageID.20.

## II.

Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). When entertaining an application for a writ of habeas corpus, the Court "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

## III.

### A.

Before determining the merits of the Petition, the Court must first address a threshold question: Respondents' argument that Petitioner is required to exhaust his administrative remedies before he is permitted to proceed with his petition. ECF No. 4 at PageID.48. Exhaustion, however, is not required.

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* Here, no statute or rule requires administrative exhaustion.

"Exhaustion requirements not written into the text of the statute are prudential." *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025) (citing *Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994)). Prudential exhaustion is a "court-created" doctrine. *Perkovic* at 33 F.3d at 619. The Sixth Circuit has not addressed whether courts should apply prudential exhaustion to noncitizens' habeas petitions for unlawful detention. *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25CV01621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025). And some Sixth Circuit judges have expressed skepticism about exhaustion requirements not written into a statute. *See Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 900–01 (6th Cir. 2020) (Thapar, J., concurring) (questioning the continued validity of ERISA exhaustion and observing it rests on "shaky" atextual "foundations"). Still, some courts in this circuit have applied Ninth Circuit precedent to determine whether prudential exhaustion applies in this context. *See e.g., Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4–5 (E.D. Mich. Aug. 29, 2025); *Villalta v. Greene*, No. 4:25-cv-01594, 2025 WL 2472886, at *2 (N.D. Ohio Aug. 5, 2025); *Hernandez*, 2025 WL 2444114, at *8–10.

But a court can still waive prudential exhaustion requirements in circumstances in which (1) the legal question is "fit" for resolution and delay means hardship, or (2) when exhaustion would prove "futile." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Under both scenarios, waiving prudential exhaustion is appropriate here.

**1.**

Start with whether the legal question is fit for review and whether the delay would impose hardship. The habeas petition requires determining whether §1225(b)(2)(A) or §1226(a) applies to Petitioner's detention. *See generally* ECF No. 1. To determine which statutory provision applies, this Court must engage in statutory interpretation, which has historically been within the purview

of the courts. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citing *Marbury v. Madison*, 1 Cranch 137, 177 (1803)). The issue is ripe for resolution.

Next, Petitioner faces significant hardship if required to advance an appeal with the Board of Immigration Appeals (BIA). Courts may waive exhaustion requirements when an administrative remedy would entail an indefinite or unreasonable timeline. *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992); *see also Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025). "Bond denial appeals 'typically take six months or more to be resolved at the BIA.'" *Pizarro Reyes*, 2025 WL 2609425, at *3 (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wa. 2025). And any "delays inherent" in the BIA's administrative process "would result in the very harm that the bond hearing was designed to prevent: 'prolonged' detention without due process during lengthy and backlogged removal proceedings." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation omitted); *see also Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *5 (D. Mass. July 7, 2025) (finding the "prolonged loss of liberty" from "several additional months" in possibly unlawful detention would "constitute irreparable harm"); *Pizarro Reyes*, 2025 WL 2609425, at *3 ("The prevention of six months or more of unlawful detention thus outweighs the interest the BIA might have in resolving [petitioner's] appeal of his bond determination"); *Lopez-Campos*, 2025 WL 2496379, at *5 (stating that it is "unmistakable that waiver is appropriate because depriving [petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship"). Similarly, the prospect of Petitioner serving six months or more of potentially unlawful detention would result in a significant hardship. Thus, any prudential exhaustion requirement is waived.

### 2.

Next, the futility of any appeal to the BIA is another, independent reason to waive exhaustion. Waiver based on futility is appropriate when an administrative agency "has

predetermined the disputed issue" by having a "clearly stated position" that the petitioner is not eligible for the relief sought. *Cooper v. Zych*, No. 09-CV-11620, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009); *see also McCarthy*, 503 U.S. at 148 (finding that an "administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it.").

Here, Respondents already made their position clear through *In re Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which rejected the same arguments that Petitioner advances. Respondents acknowledge *In re Hurtado* is not only binding on the immigration courts, but also that Petitioner is unlikely to obtain relief because of this decision—thus rendering any administrative appeal futile. ECF No. 4 at PageID.49. So the futility of any appeal to the BIA is another reason to waive any prudential exhaustion requirement.

**B.**

Turn to the Petition's merits. Again, there is only one issue in this case: which statutory provision governing the detention of noncitizens pending removal proceedings applies to Petitioner, §§1225 or 1226. Petitioner argues that §1225(b)(2) does not apply to him because he is neither a recent arrival nor is he seeking admission. Rather, he contends that §1226 applies to noncitizens, like him, who reside within the United States but are charged as inadmissible for having entered the country without inspection.

Petitioner is correct. The statutory text and context, structure of the statutory scheme, and history of the statute show that §1226 is the applicable governing statutory provision. Thus, Petitioner is entitled to a bond redetermination hearing.

**1.**

Start with the text and context. "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45

F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). Courts must assign each word of the statute its "ordinary, contemporary, common meaning." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (internal citation omitted). Courts must also remember that "[s]tatutory language has meaning only in context." *Id.* (quoting *Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 545 U.S. 409 (2005)).

The text of §1225(b)(2)(A) reads:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.[1]

(emphasis added). While §1225(b)(2)(A) is a mandatory detention provision, §1226(a) is not:

> (a) Arrest, detention, and release
>
> > On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> >
> > *(1) may continue to detain the arrested alien;* and
> >
> > *(2 )may release the alien on—*
> >
> > > *(A)bond* of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

(emphasis added).

Begin with the language of the statutes. Respondents argue that Petitioner is an "applicant for admission" as defined under 8 U.S.C. § 1225(a)(1), which deems any noncitizen "present in the United States who has not been admitted" to be an "applicant for admission." ECF No. 4 at PageID.50. Under that reading, every single person who has not been admitted legally into the United States an applicant for admission, and thus subject to § 1225(b)(2)(A) mandatory detention—including Petitioner.

---

[1] The subsections in the first clause of the provision are not relevant to the case.

Next, Respondents argue that Petitioner is under §1225(b)(2)(A) because the statute defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." ECF No. 4 at PageID.88; 8 U.S.C. § 1101(a)(13)(A). Thus, Respondents argue that whether Petitioner was "seeking admission" is based on whether he was seeking "lawful entry". *See* ECF No. 4 at PageID.51. Respondents point to two statutory provisions identifying noncitizens who are not seeking admission. *Id.* at PageID.52. The first are those noncitizens who withdraw their applications for admission and "depart immediately from the United States," 8 U.S.C. § 1225(a)(4), and the second are those who agree to voluntarily depart instead of being subject to removal proceedings or before the completion of those proceedings. 8 U.S.C. § 1229c(a)(1). Under Respondents' reading, noncitizens present in the United States who have not been lawfully admitted and who do not agree to immediately depart are seeking "lawful entry" and seeking admission subject to §1225(b)(2)(A). *See* ECF No. 4 at PageID.52. Thus, Petitioner would also appear to fall under this, admittedly broad, definition of "seeking admission."

Section 1226 is far less specific; it can best be understood as a catchall authorizing the detention of noncitizens "[o]n a warrant issued by the Attorney General" pending removal proceedings. Petitioner, too, could fall within the application of this provision.

But context informs the statutory language's meaning. *Kentucky*, 23 F.4th at 603; *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)) ("Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'").

Looking at the context, start with the titles for each section. While the titles of sections are not binding, they can be instructive as to what a section pertains to. *Dubin v. United States*, 599 U.S. 110, 120–21 (2023). The titles here indicate that § 1226 applies to Petitioner because Petitioner's proceedings stem from detainment for inadmissibility within the country's interior years after arriving, rather than from detainment upon arrival to the country.

Indeed, Section 1225(b)(1) states that the section governs "Inspection of aliens *arriving* in the United States and certain other aliens who have not been admitted or paroled." (emphasis added). Thus, § 1225(b) can best be understood as a statute governing apprehension of noncitizens at the border. This reading is bolstered by the fact that § 1225 establishes an inspection scheme for when to *admit* a noncitizen into the United States. By contrast, 8 U.S.C. § 1226 governs "Apprehension and detention of aliens"—which is notably more general, and not specific to a port of entry or border context. Thus, § 1225 is limited to noncitizens detained at a port of entry, unlike Petitioner's, whereas § 1226 appears to be a catchall provision governing noncitizens who have already been present in the United States, like Petitioner. It follows, then, that Petitioner's detainment falls outside of § 1225's grasp and within § 1226's catchall-net.

**2.**

The structure of the statutory scheme also bolsters applying § 1226. "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *King v. Burwell*, 576 U.S. 473, 492 (2015) (quoting *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371(1988)). As the Supreme Court stated in *Jennings v. Rodriguez*, § 1226 sets out the "default rule" and "generally governs the process of arresting and detaining that group of aliens pending their removal." 583 U.S. 281, 288 (2018). And, while the Supreme Court acknowledged that §1225(b)(2)(A) is also a broad "catchall", that

Court explained that this provision only applied to "all applicants for *admission* not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287 (emphasis added). Indeed, the Court framed §1225 as part of the "process of decision generally begin[ing] at the Nation's borders and ports of entry." *Id.*

While *Jennings* did not address whether noncitizens like Petitioner, who have been in the U.S. for decades, were "applicants for admission," the Court's explanation still indicates that § 1226 is the primary statutory provision governing the detention of noncitizens. Thus, § 1225 can best be understood as a limited provision governing removal proceedings of arriving noncitizens within the statutory scheme, which does not apply to Petitioner, who was already present in the United States decades before his detention.

Also in the structural vein, the canon against surplusage further supports § 1226's application. "It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

This year, Congress enacted the Laken Riley Act, amending § 1226. Pub. L. No.119-1, 139 Stat. 3 (2025). The Laken Riley Act added subsection § 1226(c)(1)(E) which states that the Attorney General must take into custody any noncitizen who are, among other groups, inadmissible under § 1182(a)(6)(A), which govern any "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." § 1182(a)(6)(A)(i). Because Petitioner was never "admitted" into the United States, he falls under this provision. The added provision under the Laken Riley act requires detention without bond for noncitizens under § 1182(a)(6)(A) *if* that noncitizen is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts

which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." § 1226(c)(1)(E)(ii). In this way, the new provision would be superfluous if § 1225(b)(2)(A) also governed Petitioner's detention. *See Pizarro Reyes*, 2025 WL 2609425, at *5; *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8.

Respondents argue that, while there may be a redundancy between the §1225(b)(2) and the Laken Riley Act, there is no "positive repugnancy" between the two laws. *See* ECF No. 4 at PageID.54 (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254 (1992)). "Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws." *Connecticut Nat. Bank*, 503 U.S. 249 at 253–254. But as discussed before, the conflicts between §1225(b)(2) and the Laken Riley Act are not mere "redundancies." For instance, even if Petitioner had committed one of the felonies listed under § 1226(c)(1)(E)(ii), he would already be mandated detention under Respondent's reading of §1225(b)(2), rendering this portion of the Laken Riley Act entirely moot. As other courts in the district have held, "'[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless' and this Court, too, 'will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).'" *Lopez-Campos*, 2025 WL 2496379, at *8 (quoting *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025); *see also Pizarro Reyes*, 2025 WL 2609425, at *5 ("[B]ecause an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond

a doubt entitled to be admitted,' ICE would never need to rely on adding § 1226(c)(1)(E) to detain them.") (quoting *Gomes*, 2025 WL 1869299, at *7).

As here, "[t]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). Because Respondents' reading of §1225(b)(2)(A) would render key parts of the recently added Laken Riley Act moot, the Court must reject Respondents' interpretation.

### 3.

Lastly, § 1226's legislative history indicates that the statute applies to noncitizens like Petitioner who now reside in the United States but entered without inspection. In one case, for example, the court explained the legislative history of § 1226's predecessor statute and released on bond noncitizens unlawfully present in the United States, like Petitioner:

> Before IIRIRA passed, the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. *See* 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability . . . any [noncitizen] . . . may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding against a[ ] [noncitizen] already physically in the United States[.]' "). This predecessor statute, like Section 1226(a), included discretionary release on bond. *See* § 1252(a)(1) (1994) ("[A]ny such [noncitizen] taken into custody may, in the discretion of the Attorney General ... be continued in custody . . . [or] be released under bond[.]"). Upon passing IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[ ] [noncitizen] who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same). Because noncitizens like Rodriguez were entitled to discretionary detention under Section 1226(a)'s predecessor statute and Congress declared its scope unchanged by IIRIRA, this background supports Rodriguez's position that he too is subject to discretionary detention.

*Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025). And cases within this district agree with that analysis. *See Pizarro Reyes*, 2025 WL 2609425, at *8.

Respondents point to the BIA's opinion in *In re Hurtado*, where the BIA concluded that § 1225(b)(2)(A) covers inadmissible noncitizens who lived unlawfully in the United States for

- 12 -

longer than two years without apprehension. 29 I&N Dec. 216 (2025). The BIA reached a different conclusion in its statutory analysis, but the Court is not bound by it. *See Loper Bright Enters.*, 603 U.S. at 413 ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Respondents also point to *Torres v Barr*, where the Ninth Circuit stated that the intended purpose of IIRIRA was to close an anomaly "whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020). But *Torres* only covers the history of an "applicant for admission" under § 1225(a)(1) and does not explore how this history relates to § 1226 at all. *See generally Torres*, 976 F.3d 918. And this reading misses the parenthetical in *Torres*, which explores the legislative intent. *See id.* (citing H.R. Rep. 104-469, pt. 1, at 225 (explaining that § 1225(a)(1) "[wa]s intended to replace certain aspects of the current *'entry doctrine,'* under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry") (emphasis added). Thus, neither *Torres* nor *Hurtado* impacts the analysis of the legislative history of § 1226.

Indeed, the government has for decades applied § 1226 to people like Petitioner who had already been in the country. *See* ECF No. 1 at PageID.4. "[T]he longstanding 'practice of the government'"—like any other interpretive aid—"can inform [a court's] determination of 'what the law is.'" *Loper Bright Enters.*, 603 U.S. at 386 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)).

The court in *Pizarro Reyes* also noted this longstanding practice:

When the IIRIRA passed, EOIR drafted new regulations that provided: "[a]liens who are present without having been admitted or paroled (formerly referred to as aliens who entered

without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). *For almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception . . . .* Accordingly, the Respondents' proposed statutory interpretation does not align with the executive branch's contemporaneous guidance when the IIRIA passed or with the expectations the guidance established.

*Pizarro Reyes*, 2025 WL 2609425, at *8 (emphasis added).

Respondents argue that DHS has "for several years" interpreted the scope of §1225(b)(2) to apply to noncitizens like Petitioner, and only recently changed its discretion to apply it after the BIA's recent *In re Q. Li*. decision, ECF No. 4 at PageID.102, in which the BIA held that noncitizens who fall under the scope of 8 U.S.C. §1225(b)(1), governing arriving aliens, must be detained under that section and are "ineligible for any subsequent release on bond under…§1226(a)." 29 I. & N. Dec. 66, 69 (BIA 2025); *see* ECF No. 4 at PageID.65. Respondents argue that, because the BIA's *In re Q. Li*. decision would "naturally extend to §1225(b)(2)," DHS issued a new policy instructing its employees to comply with the new binding authority. ECF No. 4 at PageID.65.

But Respondents' arguments miss the mark. First, there is no dispute that this Court is not bound by the BIA's interpretation of how §1225(b)(2)(A) applies to Petitioner. *See Loper Bright Enters.*, 603 U.S. at 413. Second, Respondents' arguments that there is no evidence that DHS interpreted the scope of §1225(b)(2) differently in the past are contradicted by the record. In fact, the way DHS acted upon his detention lends credence to Petitioner's assertion that § 1226 historically applies to people like him. Indeed, Respondents' proposed statutory interpretation is so novel that, when filling out Petitioner's Notice to Appear paperwork, the Respondents checked the box entitled "[y]ou are an alien present in the United States who has *not been admitted* or paroled," when there was another box stating "you are an *arriving alien*" that could have been checked. ECF No. 1-1 at PageID.22

Finally, this Court's interpretation and historical analysis align with nearly every other court that has addressed this issue after the DHS changed its guidance. *See, e.g., Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, --- F. Supp. 3d ---, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Gimenez Gonzalez v. Raycraft*, No. 25-CV-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025); *Gomes v. Hyde*, No. 25-CV-11571, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. 25-CV-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis*, --- F. Supp. 3d ---, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Dos Santos v. Noem*, No. 25-CV-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, --- F. Supp. 3d ---, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 25-CV-01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *1 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 25-CV-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 25-CV-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Diaz Diaz v. Mattivelo*, No. 25-CV-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); *Francisco T. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2629839 (D. Minn. Aug. 29, 2025); *Garcia v. Noem*, No. 25-CV-02180, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Hernandez Nieves v. Kaiser*, No. 25-CV-06921, 2025 WL 2533110 (N.D. Cal., Sept. 3, 2025); *Doe v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Jimenez v. FCI Berlin, Warden*, --- F. Supp. 3d ---, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Mosqueda v. Noem*, No. 25-CV-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025);

*Hinestroza v. Kaiser*, No. 25-CV-07559, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025); *Sampiao v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Guzman v. Andrews*, No. 25-CV-01015, 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025); *Lopez Santos v. Noem*, No. 25-CV-01193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-5624, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Garcia Cortes, v. Noem*, No. 25-CV-02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Pablo Sequen v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2650637 (N.D. Cal. Sept. 16, 2025); *Maldonado Vazquez v. Feeley*, No. 25-CV-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Velasquez Salazar v. Dedos*, No. 25-CV-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Hasan v. Crawford*, --- F. Supp. 3d ---, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Yumbillo v. Stamper*, No. 25-CV-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); *Beltran Barrera v. Tindall*, No. 25-CV-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Chogllo Chafla v. Scott*, No. 25-CV-00437, 2025 WL 2688541 (D. Me. Sept. 21, 2025); *Singh v. Lewis*, No. 25-CV-96, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); *Giron Reyes v. Lyons*, --- F. Supp. 3d ---, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Brito Barrajas v. Noem*, No. 25-CV-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ---, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Lopez v. Hardin*, No. 25-CV-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025); *Roa v. Albarran*, No. 25-CV-07802, 2025 WL 2732923 (N.D. Cal. Sept. 25, 2025); *Rivera Zumba v. Bondi*, No. 25-CV-14626, 2025 WL 2753496 (D.N.J. Sept. 26, 2025); *Valencia Zapata v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); *Alves da Silva v. U.S. Immigr. & Customs Enf't*, No. 25-CV-284, 2025 WL 2778083 (D.N.H. Sept. 29, 2025); *Chang Barrios v. Shepley*, No. 25-CV-00406, 2025 WL 2772579 (D. Me. Sept. 29, 2025); *Inlago Tocagon v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2778023 (D. Mass. Sept. 29, 2025); *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Romero-*

*Nolasco v. McDonald*, --- F. Supp. 3d ---, 2025 WL 2778036 (D. Mass. Sept. 29, 2025); *Quispe v. Crawford*, No. 25-CV-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); *Chiliquinga Yumbillo v. Stamper*, No. 25-CV-00479, 2025 WL 2783642 (D. Me. Sept. 30, 2025); *Quispe-Ardiles v. Noem*, No. 25-CV-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *Rodriguez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); *D.S. v. Bondi*, No. 25-CV-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Ayala Casun v. Hyde*, No. 25-CV-427, 2025 WL 2806769 (D.R.I. Oct. 2, 2025); *Chanaguano Caiza v. Scott*, No. 25-CV-00500, 2025 WL 2806416 (D. Me. Oct. 2, 2025); *Guzman Alfaro v. Wamsley*, No. 25-CV-01706, 2025 WL 2822113 (W.D. Wash. Oct. 2, 2025); *Rocha v. Hyde*, No. 25-CV-12584, 2025 WL 2807692 (D. Mass. Oct. 2, 2025); *Alvarenga Matute v. Wofford*, No. 25-CV-01206, 2025 WL 2817795 (E.D. Cal. Oct. 3, 2025); *Escobar v. Hyde*, No. 25-CV-12620, 2025 WL 2823324 (D. Mass. Oct. 3, 2025); *Cordero Pelico v. Kaiser*, No. 25-CV-07286, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); *Echevarria v. Bondi*, No. 25-CV-03252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Guerrero Orellana v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

\*\*\*

In sum, § 1226, not § 1225, applies to Petitioner's detention. The text in its context, the statutory structure, and the statute's history compel this conclusion. So do the mountains of cases that reach the same conclusion. As a result, the Petition, ECF No. 1, will be granted.

### C.

Petitioner also argues that he was detained without probable cause in violation of the Fourth Amendment. ECF No. 1 at PageID.15. But regardless of the bond analysis, ICE officials had lawful authority to arrest Petitioner under 8 U.S.C. § 1182(a)(6) and (a)(7), ECF No. 4 at PageID.48, to

which Petitioner has already admitted the basis of his inadmissibility and conceded his removability. *See* ECF No. 1 at PageID.4–5. And even if ICE could not detain Petitioner under § 1225(b)(2), they could detain him under § 1226(a). Therefore, Petitioner's arrest and detention were proper under the Fourth Amendment.

### D.

One final housekeeping matter: Respondents argue that only ICE Field Office Director Raycraft is a proper respondent; thus, all other Respondents should be dismissed. ECF No. 4 at pageID.46.

A writ of habeas corpus may only be "directed to the person having custody of the person detained." 28 U.S.C. § 2243. "Historically, the question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who has power over the petitioner and . . . on the convenience of the parties and the court." *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003) (citing *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998)). "As a general rule, a petitioner should name as a respondent to his habeas corpus petition 'the individual having day-to-day control over the facility in which [the alien] is being detained.'" *Id.* (citing *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000)). A detained noncitizen filing a habeas petition should generally name as a respondent the person exercising control over their affairs, which is the Immigration and Customs Enforcement (ICE) field office director.[2] *Id.* at 320.

---

[2] While *Roman* notes that the "INS District Director" is the proper person habeas petitioners should name in immigration habeas petitions, the INS (Immigration and Naturalization Services) was abolished in 2003. Immigration and Naturalization Service (INS), CORNELL LAW SCHOOL, https://www.law.cornell.edu/wex/immigration_and_naturalization_service_(ins)#:~:text=Im migration%20and%20Naturalization%20Service%20(INS,a%20petition%20to%20the%20 USCIS. (last visited October 9, 2025). It has since been replaced by the Immigration and Customs Enforcement (ICE), Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS). *Id.*

As this Court has said in previous opinions, the Acting Director of the Detroit Field Office of ICE's Enforcement and Removal Operations Division, Kevin Raycraft, is the "immediate custodian" for petitioners similarly situated to Petitioner. *Contreras-Lomeli v. Raycraft*, No. 2:25-CV-12826, 2025 WL 2976739, at *3 (E.D. Mich. Oct. 21, 2025). Thus, all Respondents other than Respondent Raycraft will be dismissed.

### IV.

Lastly, the Court will decline to reach the merits of Petitioner's Due Process claim because the Court will grant the relief Petitioner seeks regarding the applicability of § 1226 to his detention. If Respondents do not provide Petitioner with a bond redetermination hearing or release him within the allotted time, he may renew his Fifth Amendment Due Process claim with this Court.

### V.

Therefore, it is **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED.**

Further, it is **ORDERED** that Respondent must provide Petitioner with a bond hearing under § 1226(a) within seven (7) days of this Order or otherwise release him.

Further, it is **ORDERED** that all Respondents except for Acting ICE Field Office Director Kevin Raycraft are **DISMISSED**.

Dated: December 10, 2025                           s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge